JOHN E. MANION

 VS

MANION & CO.

No. 7690

CHARLES F. CLAIBORNE, JUDGE.

When one pays the note of a third party, the presumption is that he owed the note; and when he attempts to recover from such third party the amount of the note paid by him, the burden of proof is on him to show that it was not his debt but the debt of the third party.

Plaintiff's action in such a case is not based on Art. C. C. 2302 but rather on Art. C. C. 2310.

 Judgment affirmed.

 March 8th, 1920.

249

CHARLES F. CLAIBORNE, JUDGE.

Plaintiff, a stockholder of defendant company, sues for $829.50 representing the amount of a dividend declared by the defendant Company. His right to the dividend is admitted by the defendants but they plead in reconvention a claim of $956.09, representing a note of like amount which defendants paid in error believing it to be *their* debt, while in reality the note was drawn and due by the plaintiff, John E. Manion, individually.

There was judgment in favor of the plaintiff, John E. Manion, and against the defendants, Manion & Co., for $829.50 as prayed for; and in favor of John E. Manion and against Manion & Co. rejecting their reconventional demand, reserving their rights to the proceeds of the policy deposited by consent.

This is not an action against the creditor for the return of a payment not due, and is not based on Art. C. C. 2302. It is against a defendant who has not received the money, but who has been benefited by a payment made by plaintiff. It is based upon the theory that plaintiff, who did not owe the note, has paid it to the discharge of the defendant, the real debtor, and has thus acted as the agent or <u>negotiorum gestor</u> of the plaintiff; and that the latter must reimburse the defendants, as he cannot enrich himself at their expense. 31 Demol § 327 p 272; 20 Laurent § 364; 5 Larombiere 648 § 11.

C. C. 2299 (2278):

"Equity obliges the owner, whose business has been well managed, to comply with the engagements contracted by the manager, in his name; to indemnify the manager in all the personal engagements he had contracted; and to reimburse him all useful and necessary expenses".

C. N., 1375; 20 Laurent § 329.

C. C. 3022 (2991):

250

"The principal ought to reimburse the expenses and charges which the agent has incurred in the execution of the mandate, &c".

This action is derived rather from Article C. C. 2310 (2288) which reads as follows;

"He who, through mistake has paid the debt of another to whom he believed himself-indebted, has a claim to reimbursement from the creditor. This right ceases if, in consequence of the payment, the creditor has destroyed or parted with his title; but the recourse still remains to the person paying against the true debtor". C. N. 1377.

In so far as the right of action of Manion & Co. against the Insurance is concerned, its error in believing itself the debtor of the note was essential; 20 Laurent ら 368 p 390, but in so far as its recourse against Manion is concerned, the first question to consider is whether the note was due by John E. Manion, and not by Manion & Co.; because if the note was due by Manion & Co., they would have no recourse against John E. Manion.

Have Manion & Co. proved that they did not owe this note? The burden of proving that they did not owe it lies with them. The presumption that they owed the note results from their paying it; the burden of overcoming this presumption rests on them. 31 Demol. ら 284 p 238 ら 286; 20 Laurent ら 367 p 388.

But let us suppose,for the sake of argument, that the note was not the debt of Manion & Co. but appeared to be due by John E. Manion to the Insurance Company. By paying it, Manion & Co. could only acquire the rights which the Insurance Company had against John E. Manion; and if the Insurance Company could not enforce payment of the note from John E. Manion, neither can Manion & Co.

John E. Manion was manager for Manion & Co.; his life was insured in the Equitable Life Assurance Society for $50,000.; the policy was payable one half to his heirs and the other half to Manion & Co.; John E. Manion issued his three promissory notes for $963.35 each, payable at one, two, and three years, representing one half of the premium of each year; this note was signed in concurrence with an agreement concerning the policy. This agree-

ment was made between F. P. Thompson, represanting the Insurance Company, and John E. Manion. No one else knew what that agreement was. John E. Manion testified that he furnished these three notes as President and Manager of Manion & Co.; that the notes were signed by him individually at the request of Thompson to correspond with the policy; that they represented one half of the amount of the premium due by Manion & Company for their interest in the policy; that he was not to pay any premiums at all for his share; that his share of the premiums was to be paid from the dividends accruing after the third year; that it was the consideration he was receiving for insuring his life in favor of Manion & Company.

F. P. Thompson testified that he paid to the Company the share of the premiums due by John E. Manion, which the latter owes him now; "that the policy would have earned the money after the third year, with which to liquidate the unpaid premium", and that his "idea was Manion & Company was going to pay the amount of $917.50".

One fact stands out conspicuous in the whole transaction, which is, that John E. Manion and Manion & Co., each owed one half of the yearly premium of $917.50; and that Manion & Co. paid one premium of $917.50. Their attempt now is to show that the half premium which they paid and which they now claim was the one due by John E. Manion and not by themselves. They have failed to satisfy us on that point. In the first place, the fact that they paid the note raises the very strong presumption that they considered it their debt; business men seldom pay what they do not owe; the burden of proof was upon them to show error in the payment. Besides, Thompson testifies that he paid John E. Manion's share of the premium; therefore, it must be their own debt which Manion & Co. paid.

At a meeting of the stockholders and Board of Directors of Manion & Co. on February 10th, 1915, it was

"Resolved that Manion & Company shall pay an annual premium of $917.50 the differnce between this said premium of $917.50 and the actual premium of $1835, after deducting annual dividends, is to be paid by J. E. Manion".

In a letter dated March 5th, 1915 F. P. Thompson writes to John E. Manion:

"Following our conversation in the matter of settlement, I enclose three notes of $917.50. x x x During these three years we will retain the dividends and the reserve, with your assignment, and will collect only the net amount with interest of 5% for the accommodation".

We are satisfied that in making the payment, the plaintiff paid its own debt; therefore, the judgment is affirmed.

.

May 17th, 1920.